## NON-PROSECUTION AGREEMENT

1.      The United States Attorney's Office for the Western District of Virginia ("USAO-WDVA") and the United States Department of Justice's Consumer Protection Branch ("CPB") and Reckitt Benckiser Group plc, and any and all current and former affiliated entities (these Reckitt Benckiser Group entities, with the exclusion of Reckitt Benckiser Pharmaceuticals, Inc., now known as Indivior, are collectively referred to as the "Company")[1] pursuant to authority granted by its Board of Directors, enter into this Non-Prosecution Agreement ("Agreement") to resolve the investigation by the USAO-WDVA and CPB of the Company related to the marketing, sale, and distribution of Suboxone in the United States during the time period 2010 to 2014 by its former subsidiary, Reckitt Benckiser Pharmaceuticals Inc. (now known as Indivior).

2.      This Agreement resolves all of the Company's potential federal criminal liability (except as to potential criminal tax violations, as to which the USAO-WDVA and CPB make no agreement) based on the subject matter of the indictment in *United States v. Indivior Inc. et al.*, Case No. 1:19CR16 (W.D. Va. Apr. 9, 2019) ("Indictment").

3.      The USAO-WDVA and CPB enter into this agreement based on the individual circumstances presented by this case, including the Company's commitment to:

      a.      comply fully with the terms of the Civil Settlement Agreement included as Attachment 1 to this Agreement;

      b.      comply fully with the terms of the Federal Trade Commission's ("FTC") Stipulated Order For Permanent Injunction And Equitable Monetary Relief to be entered in the United States District Court for the Western District of Virginia; and

      c.      fulfill all terms of this Agreement.

4.      The Company's obligations under this Agreement will have a term of three years from the date all parties have signed this Agreement ("Effective Date").

5.      The Company will pay a total of $1,400,000,000 (one billion four hundred million dollars). This amount shall be allocated as follows:

      a.      $700,000,000 (seven hundred million dollars) to be paid pursuant to the Civil Settlement Agreement;

---

[1] For the avoidance of any doubt, and as repeated in paragraph 18, below, the "Company" does **NOT** include any individual, Indivior, Inc., Indivior plc, or Reckitt Benckiser Group plc's former subsidiary, Reckitt Benckiser Pharmaceuticals, Inc., and its successors. Nothing in this Agreement resolves, in any way, any liability of any individual, Indivior, Inc., Indivior plc, or the Company's former subsidiary, Reckitt Benckiser Pharmaceuticals, Inc., and its successors.

Exhibit 1 to Forfeiture Settlement Agreement

b.  $647,000,000 (six hundred forty-seven million dollars) for forfeiture of proceeds to be paid on or before August 10, 2019, as directed by the USAO-WDVA;

c.  $50,000,000 (fifty million dollars) to resolve claims by the FTC to be paid as set forth in the Stipulated Permanent Injunction; and

d.  $3,000,000 (three million dollars) to the Virginia Medicaid Fraud Control Unit's ("MFCU") Program Income Fund to be paid on or before August 10, 2019, as directed by the MFCU.

6.  Other than money returned from the State Settlement Accounts, if any, as set forth in the Civil Settlement Agreement, no money paid by the Company will be returned, and the Company expressly agrees to release any and all claims it may have to the money. The Company will not file any claim or otherwise contest the payment of money set forth in this Agreement, and it will not assist anyone in asserting a claim to the money.

7.  Nothing in this Agreement or any related documents is an admission by the United States that the amounts paid by the Company are the maximum amounts that could be recovered from entities other than the Company. The United States is not precluded from arguing or presenting evidence that the total amount to be paid by others should be higher.

8.  Nothing in this Agreement or any related documents is an admission by the United States that the amounts paid by the Company are the maximum amounts that could, in the absence of this agreement, be recovered from the Company. If the Company does not comply with all of its obligations under this Agreement, the United States is not precluded from arguing or presenting evidence that the total amount to be paid by the Company should be higher.

9.  Neither the Company nor any affiliated entity (including, but not limited to subsidiaries, joint ventures, etc.) will manufacture, market, distribute, or sell in the United States any Schedule I, II, or III controlled substance, as defined in the Controlled Substances Act (CSA), 21 U.S.C. § 801 *et seq.*, during the term of this Agreement.

10.  The Company will fully cooperate with all investigations and prosecutions by the Department of Justice related, in any way, to Suboxone. The Company's cooperation in the investigation and prosecution of individuals and entities pursuant to this paragraph includes, but is not limited to, using best efforts promptly to secure the attendance and testimony of any current or former officer, director, agent, or employee of the Company at any meeting or interview or before the grand jury or at any trial or other court proceeding; and truthfully disclosing all factual information, documents, records, or other tangible evidence not protected by a valid claim of privilege or work product. The Company's cooperation is subject to applicable laws and regulations, including relevant data privacy and national security laws and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine. The Company expressly understands, to the extent there is conduct

Page 2 of 5

disclosed by the Company that does not relate to Suboxone, such conduct will not be exempt from prosecution and is not within the scope of the non-prosecution terms of this Agreement.

11.    The Company will enter into and fully comply with the terms of the Civil Settlement Agreement.

12.    The Company will fully comply with the terms of the Stipulated Permanent Injunction entered into with the FTC.

13.    The Company will execute and transmit all documents needed to effectuate the terms of this Agreement.

14.    Except as may otherwise be agreed by the parties in connection with a particular transaction, the Company agrees if, during the term of this Agreement, it undertakes any material change in corporate form, including if it sells, merges, or transfers business operations material to the Company's consolidated operations as they exist as of the date of this Agreement, whether such change is structured as a sale, asset sale, merger, transfer, or other material change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. The Company shall provide notice to the USAO-WDVA and CPB at least 30 (thirty) days prior to undertaking any such sale, merger, transfer, or other change in corporate form. Nothing herein shall restrict the Company from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the USAO-WDVA and CPB.

15.    If the Company fully complies with all of the terms of this Agreement, the USAO-WDVA and CPB will not prosecute the Company for any criminal conduct based on the subject matter of the Indictment. However, if the USAO-WDVA or CPB, in their sole discretion, determine the Company (a) provided deliberately false, incomplete, or misleading information at any time in connection with this Agreement; (b) committed a felony during the term of this Agreement; or (c) violated any provision of this Agreement, the USAO-WDVA and CPB will not be bound to their agreement not to prosecute the Company for the matters covered in the Indictment. Should the USAO-WDVA or CPB determine that the Company has violated any provision of this Agreement, the WDVA or CPB shall provide prompt written notice to the Company addressed to its General Counsel, and to its outside counsel, Howard M. Shapiro, WilmerHale, 1875 Pennsylvania Avenue NW, Washington, DC, or to any successor the Company may designate, of the alleged violation and provide the Company with a 45 (forty-five) day period from the date of receipt of notice in which to make a presentation to the USAO-WDVA or CPB to demonstrate that no violation occurred, or, to the extent applicable, that the violation should not result in adverse action, including because the violation has been cured by the Company. In the event of a violation, the Company will not assert any claim under the

Page 3 of 5

United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other rule or law, that any statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. It is understood any prosecution not time-barred by the applicable statute of limitations on the Effective Date of this Agreement, including time protected as the result of existing agreements to toll the applicable statute of limitations, may be commenced against the Company. Accordingly, the Company has executed and agrees to be bound by the tolling agreement included as Attachment 2 to this Agreement.

16.     The terms of this Agreement bind the USAO-WDVA, CPB and other divisions of the Department of Justice. They do not bind the Tax Division of the Department of Justice, other federal agencies, or any state, local, or foreign law enforcement or regulatory agencies, or any other authorities. The USAO-WDVA and/or CPB will bring the cooperation of the Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company.

17.     The Company and the United States may disclose this Agreement and any other documents used to effectuate the objectives of this Agreement to the public.

18.     Nothing in this Agreement resolves, in any way, any liability of any individual. Nothing in this Agreement resolves, in any way, any liability of Indivior, Inc. Nothing in this Agreement resolves, in any way, any liability of Indivior plc. Nothing in this Agreement resolves, in any way, any liability of the Company's former subsidiary, Reckitt Benckiser Pharmaceuticals Inc. Nothing in this Agreement resolves, in any way, any liability of any successor of the entities listed in this paragraph.

19.     This Agreement sets forth all the terms of the agreement between the Company and the USAO-WDVA and CPB. No amendments, modifications, or additions to this Agreement will be valid unless they are in writing signed by the USAO-WDVA and CPB, the attorneys for the Company, and a duly authorized representative of the Company.

**Agreed to:**

**Reckitt Benckiser Group**

BY:    _Kun Bandy_                    _11 July 2019_
       RUPERT M. BONDY                          DATE
       *Senior Vice President, General Counsel and Corporate Secretary*
       *Corporate Representative of Reckitt Benckiser Group*

_Howard M Shapiro_                   _July 11, 2019_
       HOWARD M. SHAPIRO                        DATE
       *Counsel for Reckitt Benckiser Group*

Page 4 of 5

**The United States Attorney's Office for the Western District of Virginia:**

BY: _____     _____
DANIEL P. BUBAR                                             7/10/19   DATE
*Attorney for the United States,*
*Acting Under Authority Conferred by 28 U.S.C. Section 515*
ALBERT P. MAYER
*Trial Attorney, Department of Justice, Civil Division, Commercial Litigation Branch*
RANDY RAMSEYER
*Assistant United States Attorney*
KRISTIN L. GRAY
JOSEPH S. HALL
JANINE M. MYATT
*Special Assistant United States Attorneys / Assistant Attorneys General,*
*Medicaid Fraud Control Unit, Virginia Office of the Attorney General*
GARTH W. HUSTON
*Special Assistant United States Attorney / Attorney, Federal Trade Commission*
CAROL L. WALLACK
*Trial Attorney, Department of Justice, Civil Division, Commercial Litigation Branch*

**The United States Department of Justice, Consumer Protection Branch:**

BY: _____     _____
GUSTAV W. EYLER                                          7/10/19   DATE
*Director*
JILL P. FURMAN
*Deputy Director*
CHARLES J. BIRO
MATTHEW J. LASH
*Trial Attorneys*

# SETTLEMENT AGREEMENT

## I. PARTIES

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General of the Department of Health and Human Services, the Defense Health Agency, acting on behalf of the TRICARE Program; the Office of Personnel Management, which administers the Federal Employees Health Benefits Program (FEHBP); the Office of Workers Compensation Programs of the United States Department of Labor (DOL-OWCP); and the United States Department of Veteran Affairs (collectively, the "United States"); Reckitt Benckiser Group plc and Reckitt Benckiser LLC, formerly d/b/a Reckitt Benckiser Inc. (collectively, "RB Group"), and Stefan Kruszewski, The Stuart J. Finkelstein Trust, by and through its Trustee, Robert A. Finkelstein, Ann Marie Williams, Gail Scott, Christina Lemons, Mitchel Greene (collectively, "Relators") (hereafter, the United States, RB Group and Relators are collectively referred to as "the Parties"), through their authorized representatives.

## II. RECITALS

A.     Reckitt Benckiser Group plc is an English public limited company headquartered in Slough, England, the United Kingdom.  Reckitt Benckiser LLC is a subsidiary of Reckitt Benckiser Group plc and is headquartered in New Jersey.  At all relevant times through December 23, 2014, Reckitt Benckiser Pharmaceuticals, Inc. was a subsidiary of RB Group, that distributed, marketed, and sold pharmaceutical products in the United States, including a drug sold under the trade names Suboxone Sublingual Tablet ("Suboxone Tablet") and Suboxone Sublingual Film ("Suboxone Film") (collectively, "Suboxone").  Suboxone contains a combination of buprenorphine (an opioid) and naloxone (an opioid antagonist) and was approved to suppress opioid withdrawal symptoms as part of a complete treatment plan to include

Exhibit 1 to Forfeiture Settlement Agreement                    Attachment 1 to Non-Prosecution Agreement

Case 1:19-cv-00027-JPJ-PMS   Document 2-1   Filed 07/11/19   Page 6 of 35   Pageid#: 14

counseling and psychosocial support.  In 2014, Reckitt Benckiser Pharmaceuticals, Inc. was spun

off as a separate corporation and renamed Indivior, Inc.

       B.     The following *qui tam* actions have been filed against RB Group and related

corporate entities pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C.

§ 3730(b) (the "Civil Actions"):

- *United States ex rel. Kruszewski v. UNDER SEAL*, No. XX-cv-XXXX (D.N.J.)

- *United States ex rel. Finkelstein v. Reckitt Benckiser Pharms., Inc.*, No. 1:14-cv-0059 (W.D. Va.)

- *United States ex rel. Williams v. Reckitt Benckiser, Inc.,* No. 1:13-cv-00036 (W.D. Va.)

- *United States ex rel. Scott v. UNDER SEAL*, No. XX-cv-XXXX (D.N.J.)

- *United States ex rel. Lemons v. Reckitt Benckiser Pharms.*, No. 1:15-cv-00016 (W.D. Va.)

- *United States ex rel. Greene v. UNDER SEAL*, No. XX-cv-XXXX (D.N.J.)

The United States partially intervened in the Civil Actions pending in the Western District of

Virginia on August 1, 2018.  The United States will partially intervene in the Civil Actions

pending in the District of New Jersey on or after the execution of this Agreement.

       C.     The United States contends that RB Group directly or through its subsidiaries

submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of

the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare"); the Medicaid Program, 42

U.S.C. §§ 1396-1396w-5 ("Medicaid"); the TRICARE Program, 10 U.S.C. §§ 1071-1110b

("TRICARE"); the FEHBP, 5 U.S.C. §§ 8901-8914; and the following DOL-OWCP programs:

the Federal Employees' Compensation Act, 5 U.S.C. § 8101 *et seq.*, the Energy Employees

Occupational Illness Compensation Program Act, 42 U.S.C. § 7384 *et seq.*, and the Black Lung

Benefits Act, 30 U.S.C. § 901 *et seq.*; and caused purchases by the Veterans Health

Administration, 38 U.S.C. Chapter 17 (collectively, the "Federal Healthcare Programs").

D.      RB Group will enter into a separate non-prosecution agreement with the United States Attorney's Office for the Western District of Virginia and the United States Department of Justice's Consumer Protection Branch.

E.      RB Group has entered or will enter into separate settlement agreements, described in Paragraph III.1 below (the "Medicaid State Settlement Agreements") with certain states and the District of Columbia in settlement of the Covered Conduct, defined below.  States with which RB Group executes a Medicaid State Settlement Agreement in the form to which RB Group and the National Association of Medicaid Fraud Control Units ("NAMFCU") have agreed, or otherwise in a form to which RB Group and an individual State agree, shall be defined as "Medicaid Participating States."

F.      The United States contends that it and the Medicaid Participating States have certain civil claims against RB Group, as specified in Paragraph III.2 below, for engaging in the following conduct between January 1, 2010, and December 31, 2014:

(a) The United States contends that RB Group directly or through its subsidiaries knowingly promoted the sale and use of Suboxone to physicians who were writing prescriptions (a) without any counseling or psychosocial support, such that the prescriptions were not for a medically accepted indication; and (b) for uses that were unsafe, ineffective, and medically unnecessary and that were often diverted for uses that lacked a legitimate medical purpose.  Such prescriptions lacking a legitimate medical purpose are also not for a medically accepted indication.

(b) The United States contends that RB Group directly or through its subsidiaries knowingly promoted the sale or use of Suboxone Film using false and misleading claims that Suboxone Film was less subject to diversion and abuse than other buprenorphine products and that Suboxone Film was less susceptible to accidental pediatric exposure than Suboxone Tablets. Physicians relied on these false and misleading claims in prescribing Suboxone Film, and state Medicaid agencies relied on these false and misleading claims to their detriment in making formulary and prior authorization decisions.

(c) The United States contends that RB Group directly or through its subsidiaries knowingly submitted a petition to the Food and Drug Administration on September 25, 2012, fraudulently claiming that Suboxone Tablet had been

discontinued "due to safety concerns" about the tablet formulation of the drug and took other steps to fraudulently delay the entry of generic competition for Suboxone in order to improperly control pricing of Suboxone, including pricing to federal healthcare programs.

As a result of the foregoing conduct, the United States alleges that RB Group knowingly caused false and/or fraudulent claims for Suboxone to be submitted to, or caused purchases by, the Federal Healthcare Programs. The conduct set forth in this Paragraph II.F is referred to as the "Covered Conduct."

      G.     This Settlement Agreement is neither an admission of liability by RB Group nor a concession by the United States or the Relators that their claims are not well founded. RB Group denies the allegations in the Covered Conduct and in the Civil Actions.

      H.     Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement and to Relators' reasonable expenses, attorneys' fees, and costs. Relators Scott and Lemons have also filed claims seeking relief under 31 U.S.C. § 3730(h).

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## III. TERMS AND CONDITIONS

      1.     RB Group shall pay to the United States and the Medicaid Participating States, collectively, the sum of Seven Hundred Million Dollars ($700,000,000) (the "Settlement Amount"). The Settlement Amount shall constitute a debt immediately due and owing to the United States and the Medicaid Participating States on the Effective Date of this Agreement, as defined below. This debt shall be discharged by payments to the United States and the Medicaid Participating States, under the following terms and conditions:

      a.     RB Group shall pay to the United States $500,000,000 (the "Federal Settlement Amount"), of which $250,000,000 constitutes restitution. The Federal Settlement Amount shall

be paid by electronic funds transfer pursuant to written instructions from the United States no later than 7 business days after the Effective Date of this Agreement.

      b.      RB Group shall deposit $200,000,000 (the "Medicaid State Settlement Amount") into one or more interest-bearing money market or bank accounts that are held in the name of RB Group or a subsidiary of RB Group, but segregated from other RB Group accounts (the "State Settlement Accounts") no later than 7 business days after the Effective Date of this Agreement, and make payment from the State Settlement Accounts to the Medicaid Participating States pursuant to written instructions from the NAMFCU Negotiating Team and under the terms and conditions of the Medicaid State Settlement Agreements that RB Group will enter into with the Medicaid Participating States.

      2.      Subject to the exceptions in Paragraph III.4 (concerning excluded claims) below, and conditioned upon RB Group's full payment of the Federal Settlement Amount and full deposit of the Medicaid State Settlement Amount pursuant to Paragraph III.1(b), the United States releases Reckitt Benckiser Group plc, and any and all current affiliated entities, including but not limited to Reckitt Benckiser LLC (formerly d/b/a Reckitt Benckiser Inc.), Reckitt Benckiser Healthcare (UK) LTD., Reckitt Benckiser (North America) Inc., and Reckitt Benckiser USA General Partnership (collectively, the "Released Entities"), from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision creating a cause of action for civil damages or civil penalties which the Civil Division of the Department of Justice has actual or present authority to assert and compromise pursuant to 28 C.F.R. Pt. 0, Subpart I, 0.45(d); or any common law theories, including payment by mistake, unjust enrichment, fraud, nuisance, or negligent entrustment. This Paragraph III.2 does not

Exhibit 1 to Forfeiture Settlement Agreement                    Attachment J to Non-Prosecution Agreement

release any claims the United States may have against Indivior PLC, Indivior Inc. (f/k/a Reckitt Benckiser Pharmaceuticals, Inc.), or their predecessors, or their current subsidiaries, or any of their former subsidiaries not currently owned by Reckitt Benckiser Group plc (collectively, "Indivior").

3.     Conditioned upon RB Group's full payment of the Federal Settlement Amount and full deposit of the Medicaid State Settlement Amount pursuant to Paragraph III.1(b), Relators, for themselves and for their heirs, successors, attorneys, agents, and assigns, release the Released Entities from any civil monetary claim the Relators have on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729-3733.  Each Relator represents and warrants that he or she and his or her counsel are the exclusive owner of the rights, claims, and causes of action herein released and none of them have previously assigned, reassigned, or transferred or purported to assign, reassign or transfer, through bankruptcy or by any other means, any or any portion of any claim, demand, action, cause of action, or other right released or discharged under this Agreement except between themselves and their counsel.  Claims asserted by Relators on behalf of Medicaid Participating States shall be released under the terms and conditions of the Medicaid State Settlement Agreements that RB Group will enter into with the Medicaid Participating States.  This Paragraph III.3 does not release any claims Relators may have:  (a) for reasonable attorneys' fees, expenses and costs pursuant to 31 U.S.C. § 3730(d) and/or analogous laws of the Medicaid Participating States; (b) against Indivior or any defendant named in the Civil Actions other than the Released Entities; (c) under the California Insurance Frauds Prevention Act, Cal. Ins. Code § 1871.7, *et seq.*, the Illinois Insurance Claims Frauds Prevention Act, 740 Ill. Comp. Stat. § 92, *et seq.*, the City of Chicago False Claims Act, Municipal Code of Chicago § 1-22-010, *et seq.*, and/or the New York City False Claims Act, New York City

Administrative Code § 7-801, *et seq.*; and (d) under 31 U.S.C. § 3730(h) (collectively, the "Unreleased Claims").

4.    Notwithstanding the releases given in Paragraphs III.2 and III.3 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.    Any criminal liability;

c.    Any administrative liability, including mandatory or permissive exclusion from Federal health care programs**;**

d.    Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.    Any liability based upon obligations created by this Agreement;

f.    Any liability of individuals;

g.    Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h.    Any liability for failure to deliver goods or services due;

i.    Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct;

j.    Any liability for the claims or conduct alleged in the operative complaints provided by the United States to counsel for RB Group in connection with the negotiation of this Agreement in the following *qui tam* actions, and no setoff related to amounts paid under this Agreement shall be applied to any recovery in connection with either of these actions:

- *United States ex rel. Miller v. Reckitt Benckiser Group PLC*, Case No. 1:15-cv-00017-JPJ-PMS (W.D. Va.); and

- *Sealed v. Sealed*, Case No. X:XX-cv-XXXX (S.D.N.Y.); and

k.  Any liability of Indivior.  However, the United States and the Relators shall not seek further recovery from RB Group arising out of a civil judgment against Indivior for the Covered Conduct.  This provision shall not affect any rights or claims that may exist between Indivior and RB Group.

5.  RB Group agrees that the Settlement Amount and this Agreement are fair, adequate, and reasonable pursuant to 31 U.S.C. § 3730(c)(2)(B) and agrees to take reasonable and necessary steps to defend this Agreement.

6.  Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement and agree and confirm that the Settlement Amount and this Agreement are fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  In connection with this Agreement and the Civil Actions, Relators and their heirs, successors, attorneys, agents, and assigns agree that neither this Agreement, any intervention by the United States in the Civil Actions, nor any dismissal of the Civil Actions, shall waive or otherwise affect the ability of the United States to contend that provisions in the False Claims Act, including 31 U.S.C. §§ 3730(b)(5), (d)(3) and (e), bar Relators from sharing in the proceeds of this Agreement.  Moreover, the United States and Relators and their heirs, successors, attorneys, agents, and assigns agree that they each retain all of their rights pursuant to the False Claims Act on the issue of the share percentage, if any, that a Relator should receive of the Settlement Amount, and that no agreements between the United States and Relators concerning Relator share have been reached to date.

7.      RB Group waives and shall not assert any defenses RB Group may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

8.      RB Group fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that RB Group has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

9.      RB Group fully and finally releases Relators from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that RB Group has asserted, could have asserted, or may assert in the future against Relators, related to the Covered Conduct and Relators' investigation and prosecution thereof.  RB Group reserves all rights and defenses with respect to Relators' unreleased claims, including requests for expenses, attorneys' fees and costs, in their respective cases.

10.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Federal Healthcare Program or any state payer related to the Covered Conduct; and RB Group agrees not to resubmit to any Federal Healthcare Program or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

11.     RB Group agrees to the following:

a.     <u>Unallowable Costs Defined</u>:  All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of RB Group, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement and any related non-prosecution agreement;

(2)     the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3)     RB Group's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)     the negotiation and performance of this Agreement and any non-prosecution agreement; and

(5)     the payment RB Group makes to the United States pursuant to this Agreement and any payments that RB Group may make to any Relator, including costs and attorneys' fees

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and FEHBP (hereinafter referred to as Unallowable Costs).

b.     <u>Future Treatment of Unallowable Costs</u>:  Unallowable Costs shall be separately determined and accounted for by RB Group, and RB Group shall not charge such Unallowable

Exhibit 1 to Forfeiture Settlement Agreement                                    Attachment J to Non-Prosecution Agreement

Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by RB Group or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

      c.    <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>:  RB Group further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by RB Group or any of its current subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs.  RB Group agrees that the United States, at a minimum, shall be entitled to recoup from RB Group any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

      Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies.  The United States reserves its rights to disagree with any calculations submitted by RB Group or any of its current subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on RB Group or any of its current subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine RB Group's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

12.      RB Group agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement.  Upon reasonable notice, RB Group shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals.  RB Group further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.  RB Group's cooperation is subject to applicable laws and regulations, including relevant data privacy and national security laws and regulations.

13.      This Agreement is intended to be for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph III.14 (waiver for beneficiaries paragraph), below.

14.      RB Group agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

15.      Upon receipt of the Federal Settlement Amount, above, Stipulations of Dismissal as to RB Group shall be filed in the Civil Actions pursuant to Rule 41(a)(1).  Such dismissals shall be: (1) with prejudice to the Relators with respect to all claims asserted on behalf of the

Exhibit 1 to Forfeiture Settlement Agreement                                          Attachment J to Non-Prosecution Agreement

United States under the False Claims Act, 31 U.S.C. §§ 3729-3733; (2) with prejudice to the United States with respect to the Covered Conduct; and (3) without prejudice to the United States with respect to all other claims. The dismissals shall be conditioned on the courts retaining jurisdiction over Relators' claims for a share of the Federal Settlement Amount pursuant to 31 U.S.C. § 3730(d)(1) and Relators' Unreleased Claims. Stipulations of Dismissal as to RB Group with respect to claims asserted on behalf of Medicaid Participating States shall be filed under the terms and conditions of the Medicaid State Settlement Agreements that RB Group will enter into with the Medicaid Participating States.

16.     Other than Relators' rights, if any, to seek reasonable attorneys' fees, expenses and costs pursuant to their Unreleased Claims, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

17.     Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

18.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of Virginia. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

19.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

20.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

21.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

22.     This Agreement is binding on RB Group's successors, transferees, heirs, and assigns.

23.     This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

24.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

25.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: 7|10|2019    BY: _____

DANIEL P. BUBAR
First Assistant United States Attorney
Western District of Virginia
Attorney for the United States, Acting Under Authority
Conferred by 28 U.S.C. § 515

DATED: _____    BY: _____

CRAIG CARPENITO
United States Attorney
District of New Jersey

DATED: _____    BY: _____

EDWARD C. CROOKE
Assistant Director
Commercial Litigation Branch
Civil Division
United States Department of Justice

## THE UNITED STATES OF AMERICA

DATED: _____    BY:   _____

                                    DANIEL P. BUBAR
                                      First Assistant United States Attorney
                                      Western District of Virginia
                                      Attorney for the United States, Acting Under Authority
                                      Conferred by 28 U.S.C. § 515

DATED: **7/10/19**    BY:   _____

                                      CRAIG CARPENITO
                                      United States Attorney
                                      District of New Jersey

DATED: _____    BY:   _____

                                      EDWARD C. CROOKE
                                      Assistant Director
                                      Commercial Litigation Branch
                                      Civil Division
                                      United States Department of Justice

Exhibit 1 to Forfeiture Settlement Agreement          Attachment 1 to Non-Prosecution Agreement

Case 1:19-cv-00021-JPJ-PMS   Document 2-1   Filed 07/11/19   Page 21 of 35   Pageid#: 29

## THE UNITED STATES OF AMERICA

DATED: _____     BY: _____

DANIEL P. BUBAR
First Assistant United States Attorney
Western District of Virginia
Attorney for the United States, Acting Under Authority
Conferred by 28 U.S.C. § 515

DATED: _____     BY: _____

CRAIG CARPENITO
United States Attorney
District of New Jersey

DATED: 7/11/19     BY: _____

EDWARD C. CROOKE
Assistant Director
Commercial Litigation Branch
Civil Division
United States Department of Justice

Page 15

DATED: 7/10/2019   BY: *Lisa M Re*

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services


DATED: _____   BY: _____

LEIGH A. BRADLEY
General Counsel
Defense Health Agency
United States Department of Defense


DATED: _____   BY: _____

EDWARD M. DEHARDE
Assistant Director of Federal Employee
    Insurance Operations
Healthcare and Insurance
United States Office of Personnel Management


DATED: _____   BY: _____

JENNIFER VALDIVIESO
Deputy Director of Program and System Integrity
Division of Federal Employees' Compensation
Office of Workers' Compensation Programs
United States Department of Labor

DATED: _____     BY: _____
                          LISA M. RE
                          Assistant Inspector General for Legal Affairs
                          Office of Counsel to the Inspector General
                          Office of Inspector General
                          United States Department of Health and Human Services


DATED: 07/10/2019    BY: BLEY.PAUL.NICHOL AS.1099873821  Digitally signed by BLEY.PAUL.NICHOLAS.1099873821
                          Date: 2019.07.10 13:13:55 -04'00'
                          _____
                          LEIGH A. BRADLEY
                  for     General Counsel
                          Defense Health Agency
                          United States Department of Defense


DATED: _____     BY: _____
                          EDWARD M. DEHARDE
                          Assistant Director of Federal Employee
                              Insurance Operations
                          Healthcare and Insurance
                          United States Office of Personnel Management


DATED: _____     BY: _____
                          JENNIFER VALDIVIESO
                          Deputy Director of Program and System Integrity
                          Division of Federal Employees' Compensation
                          Office of Workers' Compensation Programs
                          United States Department of Labor

DATED: _____        BY: _____
                            LISA M. RE
                            Assistant Inspector General for Legal Affairs
                            Office of Counsel to the Inspector General
                            Office of Inspector General
                            United States Department of Health and Human Services


DATED: _____        BY: _____
                            LEIGH A. BRADLEY
                            General Counsel
                            Defense Health Agency
                            United States Department of Defense


DATED: 7/10/2019        BY: *Cynthia Butler for Edward M. DeHarde*
                            EDWARD M. DEHARDE
                            Assistant Director of Federal Employee
                                Insurance Operations
                            Healthcare and Insurance
                            United States Office of Personnel Management


DATED: _____        BY: _____
                            JENNIFER VALDIVIESO
                            Deputy Director of Program and System Integrity
                            Division of Federal Employees' Compensation
                            Office of Workers' Compensation Programs
                            United States Department of Labor

DATED: _____     BY:    _____

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services


DATED: _____     BY:    _____

LEIGH A. BRADLEY
General Counsel
Defense Health Agency
United States Department of Defense


DATED: _____     BY:    _____

EDWARD M. DEHARDE
Assistant Director of Federal Employee
    Insurance Operations
Healthcare and Insurance
United States Office of Personnel Management


DATED: 7-10-2019     BY:    *Jennifer Valdivieso*

JENNIFER VALDIVIESO
Deputy Director of Program and System Integrity
Division of Federal Employees' Compensation
Office of Workers' Compensation Programs
United States Department of Labor

Exhibit 1 to Forfeiture Settlement Agreement      Attachment 1 to Non-Prosecution Agreement

Case 1:19-cv-00021-JPJ-PMS   Document 2-1   Filed 07/11/19   Page 26 of 35   Pageid#: 34

## RECKITT BENCKISER GROUP PLC

DATED: 11 July '19  BY:  _RUPERT M. BONDY_
RUPERT M. BONDY
Senior Vice President, General Counsel,
and Company Secretary

DATED: July 11, 2019  BY:  _HOWARD M. SHAPIRO_
HOWARD M. SHAPIRO
Counsel for Reckitt Benckiser Group plc

## RECKITT BENCKISER LLC

DATED: 11 July '19  BY:  _RUPERT M. BONDY_
RUPERT M. BONDY
Authorized Representative

DATED: July 11, 2019  BY:  _HOWARD M. SHAPIRO_
HOWARD M. SHAPIRO
Counsel for Reckitt Benckiser LLC

Page 17

**RELATOR STEFAN KRUSZEWSKI**

DATED: 10 July 2019    BY: _____
                                STEFAN KRUSZEWSKI
                                  Relator

DATED: July 10, 2019    BY: _____
                                  BRIAN KENNEY
                                  Counsel for Relator Stefan Kruszewski

**RELATOR THE STUART J. FINKELSTEIN TRUST,**
**BY AND THROUGH ITS TRUSTEE ROBERT A. FINKELSTEIN**


DATED: June 10, 2019         BY:

ROBERT A. FINKELSTEIN
Trustee for Relator


DATED: June 10, 2019     BY:

WILLIAM K. HANAGAMI
Counsel for Relator The Stuart J Finkelstein Trust

Exhibit 1 to Forfeiture Settlement Agreement     Attachment J to Non-Prosecution Agreement

Case 1:19-cv-00027-JP J-MS   Document 2-1   Filed 07/11/19   Page 29 of 35   PageID#: 37

## RELATOR ANN MARIE WILLIAMS

DATED: _____  BY: _____
ANN MARIE WILLIAMS
Relator


DATED: 7/10/2019  BY: _____
KENNETH YOFFY
Counsel for Relator Ann Marie Williams

Exhibit 1 to Forfeiture Settlement Agreement          Attachment 1 to Non-Prosecution Agreement
Case 1:19-cv-00027-JPJ-PMS   Document 2-1   Filed 07/11/19   Page 30 of 35   Pageid#: 38

## RELATOR GAIL SCOTT

DATED: 7/10/19     BY: _____
                       GAIL SCOTT
                       Relator

DATED: 7/10/2019   BY: _____
                       W. SCOTT SIMMER
                       Counsel for Relator Gail Scott

Page 21

**RELATOR CHRISTINA LEMONS**

DATED: 7/10/19    BY: _____

                                     CHRISTINA LEMONS
                                     Relator

DATED: 7/10/2019    BY: _____

                                     CHARLES H. RABON, JR.
                                     JOHN P. LEADER
                                     Counsel for Relator Christina Lemons

**RELATOR MITCHEL GREENE**

DATED: 7/10/19       BY: _Mitchel S Greene_
                         MITCHEL GREENE
                         Relator

DATED: 7/10/19       BY: _Joseph Gentile_
                         JOSEPH GENTILE
                         Counsel for Relator Mitchel Greene

Page 23

# STATUTE OF LIMITATIONS
# TOLLING AGREEMENT

This Statute of Limitations Tolling Agreement ("Agreement") is entered into between Reckitt Benckiser Group plc; Reckitt Benckiser Investments (aka Reckitt Benckiser Investments (2012) LLC); Reckitt Benckiser USA (2010) LLC; Reckitt Benckiser USA (2012) LLC; Reckitt Benckiser USA (2013) LLC; Reckitt Benckiser USA General Partnership and Subsidiaries; Reckitt Benckiser (USA) Inc.; RB Holdings USA, Inc.; Reckitt Benckiser Inc.; Reckitt Benckiser LLC fka Reckitt Benckiser Inc.; RB Manufacturing LLC; Reckitt Benckiser Finance (2010) Ltd; Reckitt Benckiser Corporate Services Limited; and Reckitt Benckiser Treasury Services PLC (collectively referred to as "RECKITT BENCKISER") and the United States of America, by and through its counsel, the United States Attorney's Office for the Western District of Virginia ("USAO") and the Civil Division of the U.S. Department of Justice ("Civil Division").

A.      This Agreement has been entered into to effect provisions of a Non-Prosecution Agreement entered into by RECKITT BENCKISER and the United States and to provide RECKITT BENCKISER and RECKITT BENCKISER's counsel an opportunity to present information they believe may be relevant to the USAO and Civil Division's decision-making process regarding RECKITT BENCKISER. RECKITT BENCKISER, RECKITT BENCKISER's counsel, the USAO and Civil Division acknowledge that it is their mutual intention for this Agreement to effect a waiver and tolling of the statutes of limitations for violations of federal law described in paragraph B below.

B.      This Agreement applies to any and all federal criminal offenses relating, in any way, to the development, marketing and sales of Suboxone and/or Subutex. Such violations of federal law include, but are not necessarily limited to, violations of 21 U.S.C. §§ 331, 841 and 846; 26 U.S.C. § 7201, 7206, and 7212; 31 U.S.C. § 3729; 18 U.S.C. §§ 286, 287, 371, 1001, 1035, 1341, 1343, 1347, 1348, 1349, 1956, 1957, and 1962; and 42 U.S.C. § 1320a-7b.

C.      The parties to this Agreement now agree and stipulate that the period beginning on April 11, 2014, and continuing until and including August 25, 2022 ("Exclusion Period") shall be forever excluded from any calculation of time for purposes of the application of any federal statute of limitations to any violation of federal law described in paragraph B above.

D.      The parties to this Agreement further agree and stipulate that the Exclusion Period shall not be considered or assessed against the United States for purposes of any constitutional, statutory, or other challenge involving a claim of pre-indictment delay relating to any violation of federal law described in paragraph B above.

E.    RECKITT BENCKISER, having been advised by counsel of the potential consequences of this Agreement to RECKITT BENCKISER's rights under the Fifth and Sixth Amendments of the United States Constitution, the federal statutes of limitations, and Rule 48(b) of the Federal Rules of Criminal Procedure, expressly waives RECKITT BENCKISER's right to raise any defense based on the failure of a federal grand jury or the United States to charge RECKITT BENCKISER with any violation of federal law described in paragraph B above, during the Exclusion Period.

F.    It is understood by the parties to this Agreement that nothing in this Agreement revives any criminal or civil charges for which the applicable statute of limitations ran prior to April 11, 2014.

G.    The act of entering into this Agreement does not constitute an admission by RECKITT BENCKISER of any wrongdoing; it has been entered into for the sole purpose of effectuating the Non-Prosecution Agreement entered into between RECKITT BENCKISER and the United States and furthering discussions and the exchange of information with the USAO and the Civil Division. This Agreement and its contents are admissible in evidence in any proceeding solely for the purpose of establishing that RECKITT BENCKISER voluntarily agreed to a tolling of applicable statutes of limitations. The Agreement is inadmissible for any other purpose.

H.    Except as otherwise stated herein, this Agreement does not limit or affect the right or discretion of the USAO or the Civil Division or any other component of the U.S. Department of Justice, to bring criminal charges against RECKITT BENCKISER for violation of any federal law described in paragraph B above, or any other violation of law, at any time.

READ AND AGREED TO:

RUPERT M. BONDY
    Senior Vice President, General Counsel and Corporate Secretary
    Corporate Representative of Reckitt Benckiser Group

HOWARD M. SHAPIRO
    Counsel for Reckitt Benckiser Group

Dated: _July 11, 2019_

RANDY RAMSEYER
    Assistant United States Attorney